*331 JUSTICE LEAPHART,
specially concurring.
¶33 I disagree with the Court’s conclusion that “[sjection 45-5-502(3), MCA, merely sets forth age-related circumstances which enhance the punishment for sexual assault otherwise provided in § 45-5-502(2), MCA.” Rather, I would conclude that under the United States Supreme Court’s recent decision, Apprendi v. New Jersey (2000),_U.S._, 120 S.Ct. 2348, 147 L.Ed.2d 435, the difference in age between Baker and the victim was an element of the offense defined in § 45-5-502(3), MCA.
¶34 The United States Supreme Court’s decision in Apprendi should leave no doubt that the age-related circumstances set forth in § 45-5-502(3), MCA, are an element of the felony crime of sexual assault. In Apprendi, the defendant, Apprendi, fired bullets into the home of an African-American family in a town in New Jersey. Apprendi was charged with shootings on four different dates and with the unlawful possession of various weapons. None of the charges referred to a New Jersey hate crime statute and none of them alleged that Apprendi had acted with a racial bias. Pursuant to a plea agreement, Apprendi pleaded guilty to two counts (3 and 18) of second-degree possession of a firearm for an unlawful purpose and one count of the third-degree offense of unlawful possession of an antipersonnel bomb. Under New Jersey law, a second-degree offense carried a penalty range of five to ten years. However, the state reserved the right to request that the court impose a higher “enhanced” sentence for one of the second-degree counts “on the ground that that offense was committed with a biased purpose” under New Jersey’s hate crime statute. Apprendi, 120 S.Ct. at 2352.
¶35 The trial court held an evidentiary hearing concerning Apprendi’s “purpose” in the shootings. The trial court found by a preponderance of the evidence that Apprendi’s actions were undertaken with an intimidating purpose, as required by New Jersey’s hate crime law, and held that New Jersey’s hate crime statute applied. Apprendi was sentenced to a twelve-year term on count 18 and to shorter, concurrent sentences on the other two counts. Apprendi, 120 S.Ct. at 2352. Apprendi appealed, arguing in part that due process required that the state prove to a jury beyond a reasonable doubt the predicate finding of bias on which his hate crime sentence depended. New Jersey’s Supreme Court affirmed his sentence. See Apprendi v. New Jersey (N.J. 1999), 731 A.2d 485. The United States Supreme Court granted cert.
*332 ¶36 The Court in Apprendi determined that “[a]t stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without ‘due process of law/ Arndt. 14, and the guarantee that ‘[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury/ Arndt. 6.” Apprendi, 120 S.Ct. at 2355. The Apprendi Court undertook a lengthy review of the history of the right to a jury verdict based on proof beyond a reasonable doubt and noted that “nothing in this history suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender — in imposing a judgment within the range prescribed by statute.” Apprendi, 120 S.Ct. at 2358 (emphasis added).
¶37 However, the Court observed that
[i]f a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not — at the moment the State is put to proof of those circumstances — be deprived of protections that have, until that point, unquestionably attached.
Apprendi, 120 S.Ct. at 2359. The Court went on to hold that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a.crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Apprendi, 120 S.Ct. at 2362-63.
¶38 In a discussion that is critical for the present case, the Apprendi Court distinguished its decision in McMillan v. Pennsylvania (1986), 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67, where the court approved a Pennsylvania statute under which “a fact that was not found by a jury ... could affect the sentence imposed by the judge.” Apprendi, 120 S.Ct. at 2360. Pennsylvania’s “Mandatory Minimum Sentencing Act” provided that if a judge found by a preponderance of the evidence that a defendant “visibly possessed a firearm” in the commission of a specified felony, a defendant convicted of such a felony would be subj ect to a “mandatory minimum penalty of five years imprisonment.” Apprendi, 120 S.Ct. at 2360. The McMillan Court commented that
Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court’s discretion *333 in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm.
McMillan, All U.S. at 87-88, 106 S.Ct. at 2417, 91 L.Ed.2d at 77. The Apprendi Court noted that the McMillan decision did not “budge from the position that (1) constitutional limits exist to States’ authority to define away facts necessary to constitute a criminal offense and (2) that a state scheme that keeps from the jury facts that ‘exposfe] [defendants] to greater or additional punishment’ may raise serious constitutional concernApprendi, 120 S.Ct. at 2360 (citations omitted).
¶39 Further, the Court in Apprendi characterized the distinction between sentencing factors and elements as “constitutionally novel and elusive.” Apprendi, 120 S.Ct. at 2365 (citation omitted). In a footnote, the Apprendi Court determined that “sentencing factor” is not without meaning but added that
[t]he term appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury’s finding that the defendant is guilty of a particular offense. On the other hand, when the term “sentence enhancement” is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury’s guilty verdict. Indeed, it fits squarely within the usual definition of an “element” of the offense.
Apprendi, 120 S.Ct. at 2365 n.19 (citation omitted).
¶40 The Apprendi Court concluded that “the relevant inquiry is one not of form, but of effect — does the required finding expose the defendant to a greater punishment than that authorized by the jury’s guilty verdict?” Apprendi, 120 S.Ct. at 2365. The Court determined that the effect of New Jersey’s sentencing enhancement was “unquestionably to turn a second-degree offense into a first-degree offense.... The degree of criminal culpability the legislature chooses to associate with particular, factually distinct conduct has significant implications both for a defendant’s very liberty, and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment.” Apprendi, 120 S.Ct. at 2365. The Apprendi Court concluded that New Jersey’s sentencing procedure was unconstitutional and “an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system.” Apprendi, 120 S.Ct. at 2366.
*334 ¶41 In the present case, the Court’s decision in Apprendi requires that we examine the effect of the age-related circumstances set forth under § 45-5-502(3), MCA, on the sentence that § 45-5-502(2), MCA, authorizes. Section 45-5-502, MCA, provides in pertinent part:
Sexual assault. (1) A person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault.
(2) A person convicted of sexual assault shall be fined not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both.
(3) If the victim is less than 16 years old and the offender is 3 or more years older than the victim ... the offender shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 2 years or more than 100 years and may be fined not more than $50,000.
Section 45-5-502, MCA (emphasis added).
¶42 The effect of the District Court’s determination that Baker was three or more years older than the victim (and that she was less than 16 years old) was two-fold. First, the District Court’s finding elevated Baker’s punishment from a maximum of six months to a minimum of two years imprisonment and a maximum of life imprisonment. Second, the District Court’s finding changed Baker’s conviction from a misdemeanor to a felony under Montana law. These consequences cannot be reconciled with the Apprendi Court’s definition of sentencing factors when the District Court’s finding did not support a specific sentence within the range authorized by the District Court’s finding that the defendant is guilty of violating § 45-5-502(2), MCA. See Apprendi, 120 S.Ct. at 2365 n.19. Moreover, the District Court’s finding had “significant implications” both for Baker’s very liberty, and for the “heightened stigma” associated with an offense of felony sexual assault that the legislature has selected as worthy of greater punishment. See Apprendi, 120 S.Ct. at 2365.
¶43 It is interesting to note that the Apprendi Court employed the right to a jury trial as the basis for its decision even though Apprendi entered into a plea agreement, thereby waiving his right to a jury trial. In contrast, Baker demanded and received a jury trial on the misdemeanor charge of sexual assault under § 45-5-502, MCA. Thus, in that he actually exercised his right to a jury trial, Baker fits within the Court’s rationale more so than did Apprendi himself. Furthermore, the fact that the so-called “sentencing factor” transformed *335 Baker’s misdemeanor conviction into a felony punishable by life imprisonment or by imprisonment for a term of not less than two years, brings the Supreme Court’s concern with liberty and the “heightened stigma associated with an offense the legislature has selected as worthy of greater punishment” into even sharper focus than under the New Jersey hate crime statute. The circumstances in Baker’s case present a much stronger basis for the Apprendi rationale than did the circumstances before the Court in Apprendi.
¶44 I would hold that the age-differentiation requirement under § 45-5-502(3), MCA, is clearly an element of the felony offense of sexual assault, not a mere “sentencing enhancement” as the Court concludes. However, I would affirm the District Court’s sentence on the ground that substantial credible evidence established that Baker was three or more years older than the victim when he sexually assaulted her.